# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD TAYLOR,<br><br>          Plaintiff,<br><br>    v.<br><br>KEN CLARK, et al.,<br><br>          Defendants.<br>_____/ | CASE NO. 1:07-cv-00032-AWI-SMS PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THE MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY DEFENDANT WOFFORD BE DENIED<br><br>(Doc. 85)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations - Defendant's Motion to Dismiss**

**I.      Procedural History**

Plaintiff Gerald Taylor ("Plaintiff") is a state prisoner proceeding in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and California tort law.  This action is proceeding on Plaintiff's amended complaint, filed June 20, 2007, against Defendant McKesson for battery and use of excessive physical force in violation of the Eighth Amendment; against Defendant Wofford for failure to protect Plaintiff, in violation of the Eighth Amendment; and against Defendants Adams and Clark under a theory of supervisory liability.  (Doc. 15, 1st Amd. Comp. and Doc. 19, Cog Claim Ord.)  Previously, Defendants McKesson, Wofford, Adams and Clark ("Defendants") filed for dismissal for failure to state a claim and for failure to exhaust his administrative remedies prior to filing suit (Docs. 30, 34, and 35) which was granted in part and denied in part: (1) Defendant McKesson's motion to dismiss the battery claim against him for failure to allege compliance with the California Tort Claims Act was granted with leave to

amend; (2) Defendant McKesson's motion to dismiss the excessive force claim against him for failure to sufficiently allege an injury, Defendants Adams and Clark's motion to dismiss the section 1983 supervisory liability claim against them for failure to state a claim, and Defendants' Wofford, Adams, and Clark motion to dismiss for failure to exhaust were all denied; and (3) Plaintiff was granted thirty days within which to file a second amended complaint curing the defects in his state law battery claim. (Docs. 41-42.) Plaintiff did not amend his complaint, rather he withdrew his state law battery claim. (Doc. 43.)

On May 4, 2010, Defendant Wofford filed a motion for judgment on the pleadings under unenumerated Rule 12(b) and Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 85.) Plaintiff filed an opposition on June 4, 2010 and Defendant filed a reply on June 11, 2010, (Docs. 91 and 93). The motion has been deemed submitted. Local Rule 230(l).

## II.     Defendant Wofford's Motion

Defendant named her motion a "Motion for Judgment on the Pleadings" and requests dismissal "under unenumerated Rule 12(b) and Rule 12(c) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to exhaust his administrative remedies for the claims set forth in Plaintiff's First Amended Complaint against Defendant Wofford." (Doc. 85, Def. Mot., 1:22-25.) Defendant desires for her motion to be evaluated under the standards of Rule 12(c). (Doc. 85, Def. Mot., 5:16-6:18.)

However, the Ninth Circuit Court of Appeals has found that exhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense and that the failure to exhaust nonjudicial remedies "should be treated as a matter in abatement subject to an unenumerated Rule 12(b) motion." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied Alameida v. Wyatt*, 540 U.S. 810 (2003). Additionally, this Court "may look beyond the pleadings and decide disputed issues of fact" when considering a motion to dismiss for failure to exhaust administrative remedies under the PLRA. *Wyatt,* 315 F.3d at 1120; *see also Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir.1988) (because no presumption of truthfulness attaches to Plaintiff's allegations in such matters, the court may resolve any disputed material facts before proceeding further). Defendant bears the burden of establishing that the

plaintiff failed to exhaust administrative remedies prior to filing suit. *See Wyatt*, 315 F.3d at 1120.  If the court concludes that administrative remedies have not been exhausted, the unexhausted claims should be dismissed without prejudice. *See id.* at 1120.

Defendant argues that "[n]umerous courts have granted 12(c) motions for failure to exhaust administrative remedies." (Doc. 85-1, Def. Mot., 6:3-5.)  However, the circuit court cases cited by Defendant do not support this argument:  *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (on an exhaustion issue the Second Circuit applied the standards applicable to a motion under Rule 12(b)(6), quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), and vacated an order dismissing the plaintiff's suit with remand for the district court to consider whether estoppel barred the defense assertion of the exhaustion defense); *Gordon v. Maycayo*, 43 Fed.Appx. 67 (9th Cir. Cal. 2002) is an unpublished decision which was issued prior to *Wyatt*; and *Lutchey v.* Wiley, 188 F.3d 508 (6th Cir. 1999) cited by Defendants as *Ogletree v. Wiley*, 1999 U.S. Appx. LEXIS 19755 (6th Cir. Ohio 1999) is not binding on this court as it is an unpublished decision from another circuit which was issued prior to *Wyatt*.

Defendant also argues that "the Eastern District of California has frequently allowed defendants to bring a motion for failure to exhaust with a post-answer, motion for judgment on the pleadings." (Doc. 85-1, Def. Mot., 6:5-11.)  However, the cases cited by Defendant do not support this allegation:  *Knapp v. Ali,* No. CV S-05-2520-FCD-CMK-P, 2009 WL 2591255 (E.D.Cal. August 21, 2009) was an exhaustion case that was addressed under law applicable to an unenumerated 12(b) motion; *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*, No. CIV S-04-2265-FCD-KJ, 2009 WL 2579051 (E.D.Cal. August 19, 2009) was not an exhaustion case; *Felipe v. Surgees*, No. 1:06-CV-00086-CKJ, 2009 WL 277553, at *2-3 (E.D.Cal. February 5, 2009) was an exhaustion case, but was treated as a matter in abatement subject to an unenumerated 12(b) motion; and *Larson v. Runnels*, No. CIV S-06-1794 GEB DAD P, 2008 WL 4057697 (E.D.Cal. August 28, 2008) was a case where the defendant filed a motion for judgment on the pleadings which he subsequently requested the court interpret as a motion to dismiss for failure to exhaust administrative remedies such that the case was analyzed under the standards applicable to an unenumerated 12(b) motion.

1  Further, the Court is disinclined to view the present motion as a motion for judgment on
2  the pleadings under Rule 12(c) as it would then be treated as a motion for summary judgment
3  which would apply different burdens on the parties and, if granted, would cause different end
4  results. *See* Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside
5  the pleadings are presented to and not excluded by the court, the motion shall be treated as one
6  for summary judgment and disposed of as provided in Rule 56, and all parties shall be given
7  reasonable opportunity to present all material made pertinent to such a motion by Rule 56");
8  Fed.R.Civ.P. 56; *see also Ritza v. Int'l Longshoremen's & Warehousemen's,* 837 F.2d 365, 369
9  (9th Cir. 1988) (per curiam) (" 'In ruling on a motion for summary judgment the court should not
10  resolve any material factual issue.... If there is such an issue it should be resolved at trial.... On
11  the other hand, where a factual issue arises in connection with a jurisdictional or related type of
12  motion, the general view is that there is no right of jury trial as to that issue ... and that the court
13  has a broad discretion as to the method to be used in resolving the factual dispute.' Moore's
14  Federal Practice, supra, ¶ 56.03 at 56-61 (footnotes omitted); *cf. Thornhill Publishing Co. v.*
15  *General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979) ('Faced with a factual attack on
16  subject matter jurisdiction, "the trial court may proceed as it never could under Rule 12(b)(6) or
17  Fed.R.Civ.P. 56. . . . [N]o presumptive truthfulness attaches to plaintiff's allegations, and the
18  existence of disputed material facts will not preclude the trial court from evaluating for itself the
19  merits of jurisdictional claims" ' (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*., 549 F.2d
20  884, 891 (3d Cir.1977) (footnote omitted)))"); *see also Wyatt*, 315 F.3d at 1119-20 (if the Court
21  concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is
22  dismissal without prejudice).
23  Accordingly, Defendant's motion is subject to the standards established under Rule 12(b).
24  Once viewed as a motion to dismiss under rule 12(b), the present motion must be denied as
25  untimely since it must have been "made before pleading if a responsive pleading is allowed."
26  Fed. R. Civ. P. 12(b). This is not disparate to the result reached if Plaintiff's inmate appeals are
27  reviewed and the issue of exhaustion is addressed under Rule 12(b) as there is sufficient evidence
28  to find that Plaintiff exhausted his administrative remedies regarding his claim against Defendant

4

Wofford prior to filing this action.

### III. Failure to Exhaust

#### A. Legal Standard

Defendant argues that Plaintiff failed to exhaust his claims in compliance with 42 U.S.C. § 1997e(a), subjecting the claims to dismissal. Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002). Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which Defendant has the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Wyatt*, 315 F.3d at 1119.

The California Department of Corrections and Rehabilitation has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1 (West 2009). The process is initiated by submitting a CDCR Form 602 (or a CDCR Form 1824 for medical/disability issues) either of which are commonly referred to an "inmate appeal" (hereinafter "I.A."). *Id.* at § 3084.2(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." *Id.* at § 3084.5. I.A.s must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. *Id.* at §§ 3084.5, 3084.6(c). In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006); *McKinney*, 311 F.3d at 1199-1201.

**B.     Discussion**

      **1.     Plaintiff's Claim Against Defendant Wooford**

Plaintiff is proceeding against Defendant Wofford for failure to protect Plaintiff, in violation of the Eighth Amendment. (Doc. 19, Cog Claim Ord.)

In the First Amended Complaint, Plaintiff alleges that prior to arriving at California Substance Abuse Treatment Facility and State Prison (hereinafter "SATF") he had been diagnosed as hearing impaired such that his "residual hearing, even with assistive devices would not enable him to hear emergency warnings, and needed a hearing aid, in order to communicate with others." (Doc, 15, 1st Amd. Comp., ¶ 14.) Within seven months, Plaintiff was re-classified as a "DNH - Hearing Impaired, with the use of hearing aids, and an identification vest" (hereinafter "Vest"). *Id.* at ¶ 16. Subsequently, Plaintiff was transferred to SATF as it is a Disability Placement Program (hereinafter "DPP") facility. (*Id.* at ¶ 15.)

Upon arrival at SATF, on January 27, 2006, Plaintiff informed Defendant Wofford of his hearing impairment and told her that he needed a Vest, but Defendant Wofford did not issue Plaintiff the Vest as he requested. (*Id.* at ¶ 17.) Plaintiff alleges that Defendant Wofford was a Registered Nurse at SATF and was responsible for the immediate and direct medical care of Plaintiff. (*Id.* at ¶ 7.) On February 2, 2006, Plaintiff was temporarily transferred to a facility in Los Angeles County for a court appearance. (*Id.* at ¶ 18.) Plaintiff was returned to SATF on March 2, 2006 when he again was seen by Defendant Wofford, repeated his request for a Vest, and requested a battery for his hearing aid as it was not working. (*Id.* at ¶ 19.) Defendant Wofford advised Plaintiff that she would get him a battery as soon as she could, though Plaintiff was not immediately provided with a battery or a Vest. (*Id.*)

While at SATF, Plaintiff was rehoused on the "orientation" tier, but a "DNH/Hearing Impairment sign" was not placed on Plaintiff's cell door to alert staff of Plaintiff's special needs. (*Id.* at ¶ 20.)

Plaintiff alleges that "Defendant Wofford was responsible for ensuring that Plaintiff had a hearing aid that would allow plaintiff to communicate with other inmates and staff, a [Vest] that could notify inmates and staff that he could not hear." (*Id.* at ¶ 52.) Plaintiff further alleges that

6

"Defendant Wofford knew that provision of these items to a newly received hearing impaired inmate was for safety," that "[w]ithout a hearing aid, Plaintiff could not hear what staff were saying to him, and as a consequence [Plaintiff] would be vulnerable to staff retaliation for a perceived refusal to obey orders." (*Id.*)  Plaintiff also alleges that providing a Vest "served to inform other inmates and staff that the inmate who wore it was unable to hear so that, for example, if there was an order to get down on the yard and the hearing impaired person did not hear it, he would not get shot for his refusal to obey an order." (*Id.*)

Plaintiff further alleges that "his injuries which resulted from his encounter with CO McKesson resulted, in large measure, from his inability to hear what McKesson was saying and McKesson's failure to recognize, because of Defendant Wofford, that Plaintiff could not hear what McKesson said." (*Id.* at ¶ 53.) Plaintiff alleges that "[a]s a result of [Defendant] Wofford's failure to protect Plaintiff, who was particularly vulnerable because he could not hear, Plaintiff suffered injury at the hands of CO McKesson." (*Id.*)

### 2. Summary of Relevant I.A.s

#### a. Defendant's evidence[1]

I.A. No. SATF-06-4746 – At the first level, Plaintiff questioned both why it took just under eight months subsequent to his arrival for him to be given a Vest and why the staff were not following Armstrong protocols. (*Id.* at Exh. C, p. 15.) Plaintiff requested an investigation into these problems. (*Id.*) The first level response partially granted Plaintiff's request as an inquiry was to be conducted as to why it took so long for Plaintiff to receive a Vest and noted that Plaintiff currently had a Vest and was no longer requesting any further action. (*Id.* at p. 16.) At the second level, Plaintiff explained his reasons for pursuing the matter by stating that he should have received a Vest when he arrived at SATF, and that he requested a Vest from Defendant Wofford on March 2, 2006

---

[1] Along with the I.A. noted in this section, Defendants presented evidence regarding IA No. SATF-06-01022 which is not applicable to this motion other than to show causation as it does not mention Plaintiff's hearing aids, need for a Vest, or any issue regarding Plaintiff's hearing (Doc. 85-3, Foston Decl., Exh. B, pp. 7-26) and I.A. No. SATF-07- 01703 regarding Plaintiff's repeated requests of prison staff for hearing aid batteries, filed in April of 2007, which was clearly would have been untimely since it was filed more than a year subsequent to initiation of this action. (Doc. 85-4, Fouch Decl., Exh. B, p. 9).

7

because his hearing aid was not working and that Defendant Wofford did not issue him a vest. (*Id.* at p. 18.) The second level response indicated that Plaintiff's I.A. notes that the Armstrong Remedial Plan states that a Vest shall be temporarily issued when a hearing aid is not available or working properly, noted a lack of indication in Plaintiff's file of his complaints that his hearing aids were malfunctioning and/or that he requested a Vest and noted that Plaintiff refused a Vest in April of 2005 (which was seven months prior to his diagnosis requiring a Vest and nearly a year prior to his transfer to SATF as a DPP facility). (*Id.* at p. 20.) The second level response also indicated that there was no indication in Plaintiff's record that he requested a Vest from Defendant Wofford upon arrival at SATF, but notes that on March 2, 2006, Defendant Wofford noted that Plaintiff was hearing impaired and that he told her his hearing aids were "in property," but that they had effective communication. (*Id.* at p. 21.) The second level response goes on to note that the investigation did not reveal any documentation that Plaintiff complained that his hearing aids were not working properly.[2] (*Id.* at p. 21.) The second level response further noted a review of the Armstrong Remedial Plan, the Unit Health Record, Plaintiff's records from his incarceration at a facility prior to arrival at SATF, and the Distributed Data Processing System and noted that "[m]edical staff [would] be provided additional training on this matter." (*Id.*) The second level review decision granted Plaintiff's IA "in that the issue was reviewed and the appellant was provided an explanation regarding the findings" and noted that Plaintiff could submit the issue "for a Director's Level Review if desired." (*Id.*) Plaintiff's attempt for a Director's Level Review was cancelled as untimely, but noted that "[s]taff at SATF accepted the appeal and responded thoroughly to [Plaintiff's] issues as the Second Level of Review." (*Id.* at p. 14.)

///

//

---

[2] It matters not whether Plaintiff complained that his hearing aids were not working properly since if Plaintiff's hearing aids were "in property" as noted, they were not available for his use.

### b. Plaintiff's evidence

I.A. No. SATF-06-1412 – Plaintiff described the problem as being that "[o]n March 6, 2006, [he] was placed in Ad/Seg and [his] hearing aids [were] in [his] personal property in R&R on the out to court shelf." (Doc. 91, Plntf. Opp. Exh. A, p. 14.) Plaintiff returned from that court appointment on April 8, 2006 and, as of April 12, 2006, he still did not have possession of his hearing aids. (*Id.*) Plaintiff requested that he be given his hearing aids. (*Id.*) The reviewer's action granted this I.A. in full and noted that Plaintiff received his hearing aids on April 13, 2006. (*Id.* at p. 15; Doc. 85-4, Fouch Decl., Exh. A, p. 5.)

### 3. Sufficiency of Plaintiff's Inmate Appeals

#### a. Content

In order to satisfy the exhaustion requirement, prisoners are required to comply with the applicable procedural rules governing the appeals process, and it is the appeals process itself which defines the level of detail necessary in an appeal. *Jones*, 549 U.S. at 218; *Griffin v. Apraio*, 557 F.3d 1117, 1120 (9th Cir. 2009). In California, prisoners are required only to describe the problem and the action requested. Tit. 15 § 3084.2(a). Therefore, the appeal is sufficient "'if it alerts the prison to the nature of the wrong for which redress is sought,'" *Griffin* at 1120 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) and adopting the *Strong* standard), which "advances the primary purpose of . . . notify[ing] the prison of a problem," *id.* (citation omitted).

A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. *Griffin v. Arpaio* 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. *Id.* "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought,'" *Id.* quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) and "provide[s] enough information . . . to allow prison officials to take appropriate responsive measures." *Id.*, at 1121 quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2nd Cir. 2004). "The primary purpose of a grievance is to notify the prison of a problem and facilitate its resolution,

9

1  not to lay groundwork for litigation." *Id. ref Johnson v. Johnson*, 385 F.3d 503, 522 (2004) cited
2  with approval in *Jones v. Bock,* 549 U.S. 199, 219 (2007).  "As in a notice pleading system, the
3  grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the
4  grievance need do is object intelligibly to some asserted shortcoming.'" *Johnson*, 380 F.3d at 697
5  *quoting Strong v. David*, 297 F.3d 646, 650 (7th Cir.2002).

6  In I.A. No. SATF-06-4746, Plaintiff clearly complained that the Armstrong Remedial
7  Plan was not being complied with as he was hearing disabled was not given a Vest until a
8  number of months subsequent to his arrival at SATF.  Defendant argues that, Plaintiff's claim
9  against Defendant Wofford is based on both her failure to provide Plaintiff with a Vest and
10 hearing aid batteries, and that since I.A. No. SATF-06-4746 did not mention Plaintiff's inability
11 to obtain batteries from Defendant Wofford and his request for a Director's Level Review
12 thereon was cancelled as untimely, Plaintiff did not properly exhaust his claims against
13 Defendant Wofford such that she should be dismissed from this action.  (Doc. 85-1, Def. Mot.
14 P&A, 8:8 - 9:28.)  However, the evidence submitted by Defendant shows that, under the
15 Armstrong Remedial Plan, a Vest is to be given when hearing aids are malfunctioning and/or not
16 working properly (Doc. 85-3, Foston Dec., Exh. C) which, when combined with Plaintiff's
17 complaints about not being given a Vest when it was necessary, sufficiently encompasses the
18 issue as to the working status of his hearing aids, including functioning batteries to meet the "low
19 floor" of notice pleading in inmate appeals as established under *Strong*.  Further, once this I.A.
20 was partially granted (confirming that Plaintiff had received a Vest, detailing the investigation
21 undertaken therein, and indicating that medical staff would receive additional training) Plaintiff
22 had received the relief he sought and all of the claims raised therein were sufficiently exhausted
23 such that he did not need to pursue the I.A. to the Director's Level.  *Harvey v. Jordan*, --- F.3d
24 ----, 2010 WL 1903994, (9th Cir. 2010) (finding prisoner had exhausted where his inmate appeal
25 received a "partial grant").  The Court is aware of no authority, and Defendant provides none, to
26 show that Plaintiff's thwarted attempt to pursue this I.A. to the Director's Level can and/or
27 should be used to avoid the consequences of the partial grant he received at the second level of
28 review.

In I.A. No. SATF-06-1412, Plaintiff clearly complained that he was hearing impaired, that on March 6, 2006 he was placed in Ad/Seg and that his hearing aids were in his personal property on the out to court shelf; that he returned from court several days earlier and still had not received his hearing aids. While the content of this inmate appeal was brief, under *Strong* it was sufficient to raise a safety issue over prison staff not giving him his hearing aids. This I.A. was exhausted when it was fully granted at the first level.

It matters not whether Plaintiff specifically named Defendant Wofford in either of these I.A.s since, where a prison's grievance process does not specifically require a prisoner to identify offending prison staff in an inmate appeal, the failure to do so will not be seen as a *per se* failure to exhaust a claim against a defendant who was not named in the prison grievance process. *Jones*, 549 U.S. at 200-201.

The Court rejects Defendant's apparent assumption that a Director's Level response is necessary to satisfy the exhaustion requirement and the mere absence of a Director's Level response entitles him to dismissal. *Brown v. Valoff*, 422 F.3d 926, 935-36 (9th Cir. 2005) ("[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or has been reliably informed by an administrator that no remedies are available."). A prisoner exhausts the administrative process when the prison officials purport to grant relief that resolves the issue in the grievance to his satisfaction. *Harvey*, 2010 WL 1903994.

The Court finds that Defendant's evidence submitted in support of this motion is not a full and accurate representation of the I.A.s Plaintiff filed as Defendant only submitted copies of three I.A.s filed by Plaintiff – omitting a copy of I.A. No. SATF-06-1412 which was directly on point. Further, Defendant did not submit copies of two of Plaintiff's I.A.s reflected in the submitted evidence which were generally delineated as addressing identical issues ("ADA") to the delineation of the I.A.s that Defendant chose to submit – SATF-D-06-04163 and SATF-D-06-01639. (Doc. 85-4, Fouch Dec., Exh. A, p. 5.) From the evidence submitted, it appears that I.A. No. SATF-D-06-01639 was granted in full at the second level of review – which would be sufficient to exhaust all claims raised therein if they were to address Plaintiff's hearing disability

1  and difficulty with obtaining accommodations necessitated thereby to provide for his safety (such
2  as a Vest and/or batteries for his hearing aids).  From that evidence, while I.A. No. SATF-D-06-
3  01639 is noted as being denied at the second level, Defendant did not submit any documentation
4  to show whether it was pursued through the third and final level.[3]

5  Defendant's argument that Plaintiff did not produce the I.A. No. SATF-06-1412 in
6  discovery is without merit, both as Plaintiff has submitted evidence to support that the copy was
7  in fact produced during discovery (Doc. 91, Plntf. Opp., Carter Dec., p. 13) and as "prison
8  officials are likely to have greater legal expertise and, as important, superior access to prison
9  administrative records in comparison to prisoners" such that " 'it is considerably easier for a
10 prison administrator fo show a failure to exhaust than it is for a prisoner to demonstrate
11 exhaustion.' "  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) quoting *Ray v. Kertes*, 285
12 F.3d 287, 295 (3rd. Cir. 2002).

13 **V.      Conclusion and Recommendation**

14 For the reasons set forth herein, the Court HEREBY RECOMMENDS that the motion for
15 judgment on the pleadings filed by Defendant Wofford on April 29, 2010 be DENIED
16 as inappropriately brought under Rule 12(c), untimely under Rule 12(b), and even if it were
17 considered under Rule 12(b), there is sufficient evidence to find that Plaintiff exhausted his
18 administrative remedies regarding his claim against Defendant Wofford prior to filing this action.

19 These Findings and Recommendations will be submitted to the United States District
20 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within
21 **thirty (30) days** after being served with these Findings and Recommendations, the parties may
22 file written objections with the court.  The document should be captioned "Objections to
23 Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file
24 objections within the specified time may waive the right to appeal the District Court's order.
25 *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

---

[3] It should also be noted that the document submitted as evidence is titled "Inmate/Parolee Appeals Tracking System – Level I & II" such that it does not show whether any of Plaintiff's I.A.s were ever appealed to the third and final level.  (Doc. 85-4, Fouch Dec., Exh. A, p. 5.)

12

IT IS SO ORDERED.

**Dated:   August 4, 2010**                                  **/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE