1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD TAYLOR, | CASE NO. 1:07-cv-00032-AWI-SMS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS CLARK & ADAMS BE DENIED |
| v. | |
| KEN CLARK, et al., | |
| Defendants. | (Docs. 112, 113) |
| _____/ | OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

## FINDINGS AND RECOMMENDATIONS

### I.    Procedural History

Plaintiff Gerald Taylor ("Plaintiff") is a state prisoner proceeding in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and California tort law.  This action is proceeding on Plaintiff's First Amended Complaint, filed June 20, 2007, against Defendant McKesson for battery and use of excessive physical force in violation of the Eighth Amendment; against Defendant Wofford for failure to protect Plaintiff, in violation of the Eighth Amendment; and against Defendants Clark and Adams under a theory of supervisory liability.  (Doc. 15, 1st Amd. Comp.;[1] Doc. 19, Cog Claim Ord.)

Defendants McKesson, Wofford, Clark, and Adams filed for dismissal for failure to state

_____

[1]  Defendants' request that judicial notice be taken of Plaintiff's Amended Complaint, filed June 29, 2007, Docket No. 15 is granted.  (Doc. 112-3.)

1

a claim and for failure to exhaust his administrative remedies prior to filing suit (Docs. 30, 34, and 35) which was granted in part and denied in part: (1) Defendant McKesson's motion to dismiss the battery claim against him for failure to allege compliance with the California Tort Claims Act was granted with leave to amend; (2) Defendant McKesson's motion to dismiss the excessive force claim against him for failure to sufficiently allege an injury, Defendants Clark and Adams' motion to dismiss the section 1983 supervisory liability claim against them for failure to state a claim, and Defendants' Wofford, Clark, and Adams motion to dismiss for failure to exhaust were all denied; and (3) Plaintiff was granted thirty days within which to file a second amended complaint curing the defects in his state law battery claim.  (Docs. 41-42.)  Plaintiff did not amend his complaint, rather he withdrew his state law battery claim against Defendant McKesson.  (Doc. 43.)

Defendant Wofford filed a motion for judgment on the pleadings under unenumerated Rule 12(b) and Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 85) which was ultimately denied (Docs. 100, 130).

On December 3, 2010, Defendants Clark and Adams filed a motion for summary judgment arguing that they are entitled to summary judgment because (1) there is no evidence to support a claim against either of them under 42 U.S.C. §1983, (2) Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Clark and Adams, and (3) Defendants Clark and Adams are entitled to qualified immunity.  (Docs. 112, 113.[2])  Plaintiff filed his opposition[3] (Docs. 131) and Defendants filed their reply.  (Doc. 142.)  Plaintiff was granted leave and filed a sur-reply.[4]  (Doc. 149.)  The motion has been deemed submitted.  Local Rule 230(l).

---

[2] Defendants Adams and Clark filed an Amended Notice of Motion for Summary Judgment correcting the hearing date to 1/28/2011, rather than 1/28/2010 as reflected in their initial Notice of Motion for Summary Judgment. (Doc. 136.)

[3] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on April 25, 2007.  *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).  (Doc. 14.)

[4] On January 25, 2011, a telephonic conference was held at which time the hearing of this motion was taken off calendar and Plaintiff was granted leave to file a sur-reply.

1  **II.    Plaintiff's Cognizable Allegations and Claims in the First Amended Complaint[5]**

2       Plaintiff alleged that prior to his transfer to the California Substance Abuse Treatment

3  Facility and State Prison ("SATF") in Corcoran, California he was classified as "DPH-

4  Deaf/hearing Impaired" which necessitated his use of a hearing aid in order to communicate with

5  others and that he required a "Hearing Impairment Identification Vest and transfer to a Disability

6  Placement Program ("DPP") Facility such as SATF.  (Doc. 15, 1st Amd. Compl, §§ 14, 15.)

7       Upon arrival at SATF, Plaintiff was examined by Defendant Nurse J. Wofford, whom he

8  informed of his need, but did not issue Plaintiff an identification vest.  (*Id.*, at § 17.)  Upon return

9  from a court appearance, Plaintiff once again saw Defendant Wofford and requested an

10  identification vest as well as a battery for his hearing aid, which was not working.  (*Id.*, at § 19.)

11  Defendant Wofford told Plaintiff she would get him a battery as soon as she could, but did not

12  immediately provide him with a battery or an identification vest.  (*Id.*)

13       A few days later, while Plaintiff was in the shower, he saw Defendant McKesson and

14  another officer enter his cell and exit with what turned out to be Plaintiff's glue sticks.  (*Id.*, at §§

15  21, 22.)  Upon exiting the shower, Plaintiff made inquiry regarding the glue sticks during which a

16  verbal exchange took place in which Plaintiff ultimately requested an inmate appeal CDCR form

17  602 (hereinafter "602").  (*Id.*, at §§ 23-38.)  As Plaintiff turned to return to his cell, Defendant

18  McKesson grabbed Plaintiff from behind and threw Plaintiff to the floor causing injuries and

19  pain.  (*Id.*, at §§ 38, 39.)  Plaintiff alleges that this incident occurred, at least in part, because his

20  hearing aid was not functioning properly and he did not have an identification vest.  (*Id.*, at §§

21  52-55.)

22       Plaintiff's First Amended Complaint was screened pursuant to 28 U.S.C. § 1915A and

23  found to state cognizable claims for relief against Defendant Wofford for failure to protect

24  Plaintiff, in violation of the Eighth Amendment, against Defendant McKesson for battery and use

25  of excessive physical force in violation of the Eighth Amendment, and against Defendants Clark

26

27       [5] This rendition of the factual allegations upon which Plaintiff's claims against Defendants were found
28  cognizable are presented here for overview purposes only.  Undisputed and disputed material facts are discussed
where applicable in the following sections.

3

and Adams under a theory of supervisory liability.  (Doc. 19.)  Plaintiff alleged that Defendants Clark and Adams violated his rights by failure to train, supervise, and discipline Defendant McKesson.  (Doc. 15, 1st Amd. Compl., §§ 48-51.)

## III.   Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id*.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.*, at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.*, at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

56(e); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider.  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact. *Id.*

**IV.    Undisputed Facts**[6]

**A.    Wardens**

In the chain of command at SATF, the warden is at the top, followed by chief deputy wardens, associate wardens, facility captains, correctional lieutenants, correctional sergeants and correctional officers. (*Id.*, at DUF No. 8.)  Roughly 1300 correctional officers and several thousand inmates were at SATF during the time period relevant to Plaintiff's complaint.  (*Id.*, at DUF No. 9.)  The warden can request an internal affairs investigation, but cannot appeal the outcome of an investigation showing the allegations were unsustained. (*Id.*, at DUF No. 15.)  If allegations of staff misconduct are unsubstantiated after an investigation, the warden has no authority to discipline the officer. (*Id.*, at DUF No. 16.)  The warden has no role in determining the type of training received by correctional officers during the training academy or the mandatory annual training courses.  (*Id.*, at DUF No. 36.)  The warden at SATF has the authority to look at a correctional officer's personnel file.  (*Id.*, DUF No. 86.)

---

[6] This rendition includes facts listed by both parties as undisputed in their separate statement of facts and which the opposing party did not identify as disputed in their response.  It also includes statements of fact to which one party or the other objected, but are able to be, and have been modified so as to accommodate the objection without losing the purport of each stated fact (i.e. semantics) with such modifications noted in each.  Truly material disputed facts are addressed subsequently where applicable.

1    **B.    Defendant Adams' Position & Duties**

2    Defendant Adams was employed by the CDCR since 1979, retired, then returned to work

3    as a retired annuitant. (Doc. 112-2, DUF No. 2.)  Defendant Adams was the warden at California

4    SATF from August 2000 until December of 2005. (*Id.*, at DUF No. 3; Doc. 142-1, Reply to Opp.

5    DUF No. 77.)   When Defendant Adams was warden at SATF but not physically present, he

6    would leave one of the chief deputies in charge. (Doc. 142-1, DUF No. 78.)  Defendant Adams

7    was detailed to locations other than SATF at least ten times while he was the warden, sometimes

8    for several months, including an assignment in Sacramento from June 2005 through November

9    2005. (*Id.*, at DUF No. 44.)  Defendant Adams was rarely at SATF in 2005. (*Id.*, at DUF No.

10   45.)  Defendant Clark was one of the deputy wardens left in charge while Defendant Adams was

11   warden. (*Id.,* DUF No. 79.)

12   Defendant Adams was detailed to another location and was not at SATF when two

13   internal affairs investigation reports involving Defendant McKesson were returned, and he is not

14   sure who received the documents in his absence. (*Id.*, at DUF No. 46.)  It was part of Defendant

15   Adams' responsibility as warden to be aware of officers who had an unusually large number of

16   602 complaints. (*Id.*, DUF No. 80, Ex. H[7], Adams Dep. - Singh Case 36:18-22.)  At some point,

17   Defendant Adams became concerned about Defendant McKesson's behavior in relation to

18   inmates, but he does not know when that occurred. (*Id.*, DUF No. 81, Ex. H, Adams Dep. -

19   Singh Case 37:23-25; 38:1-3.)  When Defendant Adams became concerned about Defendant

20   McKesson, he opened up at least one investigation on him. (*Id.*, DUF No. 83.)  Defendant

21   Adams admits that reviewing any previous Internal Affair investigations of Defendant McKesson

22   would have been prudent if or when Defendant Adams contemplated bringing disciplinary

23   actions against Defendant McKesson. (*Id.*, DUF No. 84; Ex. H, Adams Dep. - Singh Case

24   39:12-18.)  In answer to the question, "What you're saying is that you would assume that as part

25

26      [7] Plaintiff's "Exhibit H" has been sealed and contains excerpts of a copy of Defendant Adams' deposition testimony from another case (hereinafter "Adams Dep. - Singh Case *:*").  All references to excerpts from Defendant Adams' deposition testimony in this action are identified as "Adams Dep. *:*."  Plaintiff's "Exhibit I" has

27   been sealed and contains documents obtained through discovery in this matter which are identified by pagination on the lower right corner of each page.  Such is the demarcation utilized herein despite the fact that Plaintiff, in his

28   opposition, refers to documents from both of these exhibits as being located in "Exhibit H."

1 | of your responsibilities when you contemplated conducting an investigation of [Defendant]
2 | McKesson, that you would go back and look at his previous IA investigations at SATF?"
3 | Defendant Adams responded "Yes." (*Id.*, DUF No. 85, Adams Depo. - Singh Case 40:7-12.)

4 | ### C.    Defendant Clark's Position & Duties

5 | Defendant Clark is currently the Associate Director of Reception Centers for the
6 | California Department of Corrections and Rehabilitation (hereinafter "CDCR"). (*Id.*, at DUF
7 | No. 6.) Defendant Clark was the warden at SATF from 2006 through 2008. (*Id.*, at DUF No. 4.)
8 | Defendant Clark was either acting warden or warden in March of 2006. (Doc. 132-2, PF No. 91;
9 | Clark Dep. 99:17-2.) With the exception of a few years spent attending school and teaching,
10 | Defendant Clark has been employed by the CDCR since 1983, when he was hired as a
11 | correctional officer. (*Id.*, at DUF No. 5.) Defendant Clark has fired correctional officers for
12 | dishonesty, theft, felonies, and death of an inmate by neglect. (Doc. 132-2, PF No. 88, Clark Dep.
13 | 32:14-15.) Defendant Clark would not read every Internal Affairs report that was referred to
14 | him; rather, the Employee Relations Officer would review the reports. (*Id.,* PF. No. 89; Clark
15 | Depo. 42:24; Doc. 142-1, Def. Obj. To PF No. 89.) SATF was a hub for hearing-impaired
16 | inmates and had a large amount of hearing impaired inmates when Defendant Clark was warden.
17 | (Doc. 132-2, PF. No. 88; Clark Dep. 85:2-6.)

18 | ### D.    Precipitating Event

19 | Plaintiff arrived at the SATF on January 27, 2006, where he was incarcerated for about a
20 | year and a half. (Doc. 112-2, Def. Stmt of Undsp. Fact (hereinafter "DUF"), No. 1.) Plaintiff
21 | was a CDCR inmate at the time of the incidents giving rise to this action, and Plaintiff continues
22 | to be incarcerated in CDCR. (Doc. 132-2, Plntf Sep. Stmt. Addl Facts, (hereinafter "PF") No.1.)
23 | He has been hearing impaired since the age of eighteen as a result of significant head trauma such
24 | that, without hearing aids, he has roughly twenty percent of his hearing. (*Id.*, at PF No. 2.)

25 | On March 6, 2006, while Plaintiff was in the shower, he observed Defendant McKesson
26 | confiscate three glue sticks from his cell. (*Id.*, at DUF No. 18.) After Plaintiff observed
27 | Defendant McKesson with his property, Plaintiff went to the sallyport to ask Defendant
28 | McKesson for his property back. (132-1 at PF No. 40.) Plaintiff walked to the sallyport entrance

in search of Defendant McKesson and saw him standing in the staff restroom doorway in the day room talking to a man in civilian clothing. (Doc. 112-2, at DUF No. 19.)  Plaintiff believed the proper protocol for objecting to the removal of his property from his cell was to speak with the officer. (132-1 at PF No. 41.)  When Plaintiff arrived at the sallyport, he observed Defendant McKesson talking to a gentleman in civilian clothing. (*Id.*, at PF No. 42.)  While standing at the sallyport, Plaintiff asked Defendant McKesson if he could speak with him. (*Id.*, at PF No. 43.) Defendant McKesson then ordered Plaintiff to stand behind a yellow line and Plaintiff complied. (*Id.*, at PF No. 44.)

Plaintiff asked Defendant McKesson if he could talk to him but did not mention that he was hearing impaired. (Doc. 112-2 at DUF No. 20.)  During the following brief exchange, Plaintiff was able to communicate with Defendant McKesson because he could hear him a little and could also read his lips.[8]  (*Id.*, at DUF No. 21.) Plaintiff claims Defendant McKesson told him, "Next time you see me talking to somebody important, keep your fucking mouth shut," and Plaintiff responded that his glue sticks were important too.[9]  (*Id.*, at DUF No. 22.)  Defendant McKesson went into his office and sat down at his desk. (*Id.*, at DUF No. 23.)  Plaintiff followed Defendant McKesson to his office. (*Id.*, at DUF No. 24.)  Defendant McKesson asked Plaintiff why he was on the SNY (Special Needs Yard), but Plaintiff ignored his question "[b]ecause it wasn't important," and asked for his glue sticks back. (*Id.*, at DUF No. 25.)  Defendant McKesson refused, and Plaintiff claims he asked for an inmate grievance form (602) and told Defendant McKesson, "You're physically bigger than me, but if you give me a 602 I [sic] dust you off." (*Id.,* at DUF No. 26.)

Plaintiff claims that he was turning around to go back to his cell when Defendant McKesson grabbed him from behind by the right wrist and right shoulder, and took him to the dayroom floor. (*Id.*, at DUF No. 28.)  Plaintiff does not know whether Defendant McKesson

---

[8] Plaintiff disputed Defendants' fact as it was vague as to time (i.e. just when Plaintiff and Defendant McKesson were facing each other).  While such timing was a material fact in Defendant McKesson's motion for summary judgment, it is not material in the motion brought by Defendants Clark and Adams.

[9] This is included as an undisputed fact since the only dispute raised by Plaintiff was that Defendants' version replaced the expletive with ellipsis marks.

gave him any type of order as he was turning away.  (*Id.*, at DUF No. 29; Doc. 132-2, PF No. 62.)

Plaintiff claims his right wrist hit the ground first, followed by his shoulders and the front of his

body. (*Id.*, at DUF No. 30.)  Plaintiff's face never touched the floor because he caught himself as

he fell.  (*Id.*, at DUF No. 31.)  After he was taken to the ground, Plaintiff did not ask for an

explanation (*id.*, at DUF No. 32), though he did file a 602 requesting the incident be investigated

(Doc. 132-1, Plntf Resp. to DUF No. 32).  Plaintiff refused to comply with numerous orders to

go back to his cell, and twice told Defendant McKesson, "I can dust you off."[10]  (*Id.*, at DUF No.

27.)  Plaintiff claimed he suffered pain, swelling, and a knot on the back of his right hand after

the alleged incident on March 6, 2006.  (Doc. 112-2 at DUF No. 33.)  Plaintiff felt pain and a

knot in the same area on his right hand on three prior occasions - twice in 2005 and once on

March 1, 2006 - while doing pushups and pullups.  (*Id.*, at DUF No. 34.)  Plaintiff had surgery on

his hand on March 16, 2006.  (Doc. 132-2, PF No. 65.)  Plaintiff was prescribed physical therapy,

continues to suffer significant pain (7 on a scale of 1 to 10), and still takes pain medication for

the injuries sustained to his hand.  (*Id.*, at PF Nos. 66-68.)

Defendant McKesson field a Rules Violation Report against Plaintiff for threatening a

public official for which Plaintiff was found not guilty.  (*Id.*, at PF Nos. 70-74.)  Plaintiff's

allegations of staff misconduct against McKesson were unsustained after an investigation.  (*Id.*,

at DUF No. 47.)  Defendant Clark has no recollection of Plaintiff's grievance SATF-Z-06-01022

complaining of the use of force by Defendant McKesson,  and the second level response letter

was signed by Jack Hutchins, the chief deputy warden.[11]  (*Id.*, at DUF No. 48.)  Plaintiff has

never met Defendant Clark or Adams.  (*Id.,* at DUF No. 37.)  Defendants Clark and Adams do

not recall Plaintiff, nor were they aware of an incident between Plaintiff and Defendant

McKesson until this lawsuit was filed.  (*Id.,* at DUF No. 38.)

---

[10] The only dispute as to this fact is that Defendants claim the evidence supporting it is shown in an incident report authored by Officer Lindquist, while Plaintiff correctly points out that the evidence which Defendants rely on is a Reasonable Modification or Accommodation Request authored by Plaintiff.  (Doc. 132-1, Plntf. Rsp. to DUF No. 27, *ref.* Ex. 1 to Taylor Dep.)

[11] Plaintiff did not dispute this fact, but objected to the Hall declaration which was cited by Defendants as evidence in support of this fact.  (Doc. 132-1, Plntf. Rsp. to DUF No. 48.)  The issues raised by the Hall declaration and its consideration in this motion are discussed subsequently herein on page 32.

1    Defendant Adams testified that Defendant McKesson is an officer who addresses his job

2  in terms of "black and white" – there are no gray areas for him.  (*Id.*, DUF No. 82; Adams Dep.

3  36:4-7.)  Defendants Clark and Adams recall Defendant McKesson as a "by the book" officer

4  who enforced the rules and followed regulations.  (*Id.*, at DUF No. 39.)  Inmates file complaints

5  against officers who do their job "by the book," i.e., an officer who does his job by the book can

6  still have complaints filed against him.[12]  If an officer receives complaints, it does not necessarily

7  mean he is not doing his job.  (*Id.*, at DUF No. 41.)  Numerous SATF correctional officers have

8  been investigated by Internal Affairs several times.  (*Id.*, at DUF No. 42.)  More than one Internal

9  Affairs investigation about the same correctional officer can mean that the officer is doing his job

10 and that inmates are trying to pressure him not to do his job.  (*Id.,* at DUF No. 43.)  Use of

11 physical force by a correctional officer is common and officers are trained how to use force

12 appropriately.[13]  (*Id.,* at DUF No. 35.)

13    **A.    Supervisory Liability Under 42 U.S.C. §1983**

14        **1.    Supervision and/or Discipline**

15    It is true that the Supreme Court has rejected liability on the part of supervisors for

16 "knowledge and acquiescence" in subordinates' wrongful *discriminatory* acts.  *Ashcroft v. Iqbal*,

17 ___ U.S. ___, 129 S.Ct.1937, 1949 (2009) ("[R]espondent believes a supervisor's mere

18 knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the

19 Constitution.  We reject this argument.")  However, Defendants argument that *Iqbal* effectively

20 eviscerated supervisory liability is without merit as in the very same decision, the Supreme Court

21 held that "discrete wrongs – for instance, beatings – by lower level Government actors . . . if true

22

23        [12] Defendants asserted that inmates are more likely to file grievances against "by the book" officers, and less
24 likely to file complaints against weaker officers who let them have their way.  (*Id.* at DUF No. 40.)  Plaintiff disputed
   this fact inasmuch as it is based on Defendant Clark's deposition testimony wherein he was given a "scenario
25 example" in which an officer "could actually still be doing their job and get complaints" which does not necessarily
   imply that inmates are more likely to file grievances against "by the book" officers in all situations.  (Doc. 132-1,
26 Plntf. Rsp. to DUF No. 40.)

27        [13] Plaintiff's only dispute as to this fact is that it was written incompletely since Defendant Clark testified
   that use of force by correctional officers is "common, loosely with the term 'common,' that's open to definition, but
28 there is a lot of – in the institutions of our size there is a large amount of use of force."  (Doc. 132-1, Plntf. Rsp. to
   DUF No. 35.)

and if *condoned* by [supervisors] could be the basis for some inference of wrongful intent on [the supervisors'] part." *Iqbal*, 129 S.Ct. at 1952 (emphasis added).  Further, the Ninth Circuit very recently held that ". . . where the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others." *Starr v. Baca*, ___ F.3d ___, 2011 WL 477094, *4 (9th Cir., Feb. 11, 2011).  It is under this rubric that the traditional and still valid elements of supervisor liability within the Ninth Circuit are properly analyzed.

Plaintiff is required to prove that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  As wardens and/or employees of the CDCR at all times in issue in this action, it is undisputed that Defendants Clark and Adams acted under color of state law.  (Doc. 132-1, Plntf. Rsp. to DUF Nos. 2-6; Doc. 142-1, Def. Obj. To PF Nos. 76-79.)  The question thus becomes whether Defendants Clark and /or Adams deprived Plaintiff of his constitutional rights.

There is no *respondeat superior* liability and each defendant is only liable for his or her own misconduct. *Iqbal*, 129 S.Ct. at 1948-49.  A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *also Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); *Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).  In other words, to survive a motion for summary judgment, Plaintiff must adduce evidence that Defendant Adams and/or Clark ". . . acted or failed to act unconstitutionally, not merely that a subordinate did." *Simmons v. Navajo County, Ariz*. 609 F.3d 1011, 1020-21 (9th Cir. 2010).  "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Corales*, 567 F.3d at 570, *quoting Preschooler II*, 479 F.3d

at 1183 (*quoting Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir.2005)).

In a section 1983 claim, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.' "  *Id., quoting Preschooler II*, 479 F.3d at 1182 (*quoting Taylor*, 880 F.2d at 1045).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Id.*, *quoting Preschooler II,* at 1183 (*quoting Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978)).

Accordingly, the crux of issues in this case for purposes of this motion is whether Defendants Clark and Adams knew, or reasonably should have known, of Defendant McKesson's propensity for violence (via the various investigations into accusations against him) and whether they could have taken supervisory and/or disciplinary actions towards Defendant McKesson, other than as actually occurred to equate to a failure to act, that they knew or reasonably should have known would cause instances of Defendant McKesson using excessive force such as the type Plaintiff claims caused him injury in this case.

### a.    Defendants' Position

Defendants Clark and Adams argue that Plaintiff has not shown that Defendant McKesson violated his constitutional rights (Doc. 112-1, Def. P&A, 7:4-5), but even if he did, that Plaintiff has produced no evidence that Defendant Clark or Defendant Adams acted unconstitutionally, nor has he demonstrated that Defendant Clark or Defendant Adams caused Defendant McKesson's alleged unconstitutional conduct, or that they knew or should have known that the alleged constitutional violation would result (*id.*, at 7:5-9).  Defendants also argue that Plaintiff has no evidence to support the claim in his operative pleading that actions by Defendants Clark and Adams were "malicious, fraudulent and oppressive, with the wrongful intention of injuring plaintiff."  (*Id.,* at 7:9-11, *quoting* Doc. 15, Amd. Compl., pp. 8:8-9:19.)

Defendant Adams was the warden at SATF until December of 2005.  (*Id.,* at 7:12, Doc. 132-1, Plntf. Resp. to DUF No. 3; Adams Dep, 10:7-16.)  Plaintiff arrived shortly after Defendant Clark became the warden in January of 2006. (*Id.,* at 7:12-13; Doc. 132-1 DUF Nos.

1, 4.)  Neither Defendant Clark nor Defendant Adams recall Plaintiff, and Plaintiff never met either of them.  (*Id.,* at 7:13-14; Doc. 132-1 DUF Nos. 37, 38; Taylor Dep. 133:5-6, 134:14-15; Clark Dep. 84:24-85:15; Adams Dep. 35:22-23, 84:9-18.)  Defendants also argue that neither Defendant Clark nor Defendant Adams directly supervised Officer Defendant McKesson.  (Doc. 112-1, Def. P&A, 8:1; Doc. 132-1, DUF Nos. 7, 8; Clark Dep. 18:2-8, 13-18.)  Defendant Adams was no longer working at SATF at the time of the incident on March 6, 2006 (*id.,* at 8:1-2; Doc. 132-1, DUF No. 3; Adams Dep. 10:7-16) and, although Defendant Clark was the warden on March 6, 2006, he was far removed from Defendant McKesson in the chain of command (*id.,* at 8:2-4; Doc. 132-1, DUF No. 7; Clark Dep. 18:2-8) as several layers of supervisory personnel separated them: chief deputy wardens; associate wardens; facility captains; correctional lieutenants; and correctional sergeants (*id.*, at 8:4-6; Doc. 132-1, DUF No. 8; Clark Dep. 18:13-18).

        Defendants further argue that Plaintiff does not contend that Defendant Clark was physically present or witnessed the incident on March 6, 2006 (*id.,* at 8:6-8; Doc. 132-1, DUF Nos. 37, 38; Clark Dep. 84:24-85:6; 85:10-15; Adams Dep. 35:22-23, 84:9-18; Taylor Dep. 133:5-6; 134:14-15) and that Plaintiff has produced no evidence that either Defendant Clark or Defendant Adams could, or should have taken any disciplinary action against Defendant McKesson (*id.,* at 8:9-10).  Defendants argue that while the Amended Complaint alleges that Defendant McKesson engaged in acts of "intimidation, retaliation, brutality, and racism" that were "so numerous" that Defendants Clark and Adams should have disciplined and fired Defendant McKesson after his "psychopathic behavior in tormenting and torturing inmates was brought to their attention" (*id.,* at 8:10-14, *quoting* Doc. 15, Amd. Comp., ¶ 51), these dramatic contentions are unsupported by the evidence (*id.,* at 8:14-15); that Plaintiff has not submitted any evidence of substantiated "psychopathic behavior" or use of excessive force by Defendant McKesson (*id.,* at 8:15-16); and, that when allegations of staff misconduct are unsubstantiated after an investigation, the warden has no authority to discipline an officer (*id.,* at 8:16-18; Doc. 132-1, DUF No. 16; Adams Dep. 57:12-58:14; 68:6-9.)

        Defendants continue by arguing that Plaintiff's contention that Defendants Clark and

13

1    Adams were aware of other complaints about Defendant McKesson prior to the incident on

2    March 6, 2006 is insufficient to raise a triable issue of fact that Defendant Clark or Defendant

3    Adams "conducted [himself] in a reckless or malicious manner or that [his] actions were, in fact,

4    deliberate." (*Id.,* at 8:19-22, *quoting Jeffers v. Gomez*, 267 F.3d 895, 916 (9th Cir. 2001).)

5    Defendants argue that they are entitled to summary judgment as there is no evidence of an

6    "affirmative link" between the conduct of either Defendant Clark or Defendant Adams and the

7    alleged constitutional deprivation.  (*Id.,* at 8:23-25, *quoting Rizzo v. Goode*, 423 U.S. 362, 371

8    (1976).)

9            Defendants also argue that they are entitled to summary judgment since Plaintiff

10   submitted neither argument, nor evidence that either Defendant Clark or Defendant Adams

11   personally participated in the alleged violations, and that the testimony from Plaintiff's expert

12   (that Defendants Clark and Adams are liable for not disciplining Defendant McKesson more

13   severely which would have prevented the incident of which Plaintiff complains) erroneously

14   assumes that Defendants Clark and Adams could have disciplined a correctional officer even

15   after investigation found claims of excessive force to be unsubstantiated.  (*Id.,* at 4:1-5:20.)

16   Defendants rely on the facts that Defendants Clark and Adams did not have the authority to

17   discipline a correctional officer based on unsubstantiated allegations and, while they could

18   request an internal affairs investigation, they could not appeal the outcome of an investigation

19   showing the allegations were unsustained.  (*Id.,* at 5:10-12; *see* Doc. 132-1, DUF Nos. 15 & 16;

20   Clark Dep . 27:12-14; Adams Dep. 57:12-58:14; 68:6-12.)

21           Defendants finally argue that "[f]ollowing the decision by the United States Supreme

22   Court in *Ashcroft v. Iqbal*, to the extent supervisor liability survived the opinion at all, a

23   supervisor liability claim against a defendant sued in his individual capacity must be based on an

24   affirmative, purposeful act by the defendant, such as where a supervisor implements an official

25   policy that is so deficient so as to result in a repudiation of a plaintiff's constitutional rights; [that

26   s]upervisor liability may no longer be based on inaction, such as knowledge and acquiescence of

27   a subordinate's unconstitutional conduct and a failure to act; [and that t]o the extent Ninth

28   Circuit case law holds otherwise, it is no longer controlling authority."  (Doc. 142, Def. Reply,

14

1:21-2:2.)  Defendants further suggest that supervisor liability has been "entirely eliminated," or

has at least been severely narrowed such that "liability may no longer be based on inaction, such

as knowledge and acquiescence and a failure to act or deliberate indifference regarding a

subordinate's alleged unconstitutional conduct," but rather that "liability may only be found

where the supervisor commits a purposeful act that leads to the deprivation of the plaintiff's

constitutional rights."  (*Id.,* at 3:6-17.)  While Defendants' arguments along this vein would be

true if this case dealt with a discrimination action under the First or Fifth Amendments, as

discussed above, this argument does not extend and should not be applied to claims of deliberate

indifference under the Eighth Amendment.  *Starr*, 2011 WL 477094.

**b.    Plaintiff's Position**

Plaintiff argues that both Defendants Clark and Adams failed in their duties to properly

discipline and supervise Defendant McKesson which directly contributed to his excessive use of

force against Plaintiff.  (Doc. 132, Opp. P&A, 1:23-2:8.)

Plaintiff argues that "[b]oth [Defendants] Adams and Clark were the ultimate supervisors

of [Defendant] McKesson during the time leading up to [Defendant] McKesson's encounter with

Plaintiff.  [Defendant] McKesson had been subject to numerous reports and investigations

involving accusations of excessive force and aggressive behavior.  [Defendants] Adams and

Clark took no measures to properly exercise their supervisory responsibility regarding

[Defendant] McKesson.  They were deliberately indifferent both by abdicating their

responsibilities to properly supervise [Defendant] McKesson and for failing to properly

discipline him when circumstances warranted real, meaningful, corrective discipline."  (*Id.,* at

8:12-18.)

Plaintiff argues that "[s]upervisors may be liable where their participation in the

deprivation of a constitutional right is not direct but involved 'the setting in motion of acts which

cause others to inflict constitutional injury.'" (Doc. 132, Opp. P&A, 8:19-24, *quoting Larez v.

City of Los Angeles*, 946 F.2d 630, 645 (1991); *ref. Oona R.-S by Kate S. v. Santa Rosa City

Schools*, 890 F.Supp. 1452 (N.D. Cal. May 2, 1995) (unpublished decision) (1983 claim satisfied

when defendant "in a supervisory capacity, took culpable action or wrongfully failed to act in the

1  training, supervision, or control of his subordinates").)

2       Plaintiff suggests that "[t]his liability need not stem from an affirmative act, but can be

3  the result of an abdication of a supervisory duty" (*id.,* at 8:25-28, *ref. Madrid v. Gomez*, 889

4  F.Supp. 1146, 1249 (N.D. Cal. 1995) (prison officials liable for abdicating their duty to supervise

5  and monitor the use of force and deliberately permitting a pattern of excessive force to develop

6  and persist)) and that "[t]he continual failure to control and discipline officers that present a

7  danger can support a finding of deliberate indifference" (*id.,* at 8:28-9:3, *ref. Vann v. City of New*

8  *York*, 72 F.3d 1040, 1051 (2d Cir. 1995) (inadequate monitoring of identified "problem" officers

9  could support liability).  Plaintiff argues that his claims against Defendants Clark and Adams are

10 supported by several considerations.  (Doc. 132, Opp. P&A, 9:4.)

11      The first item Plaintiff presents for consideration is Defendant McKesson's unstable

12 nature as demonstrated by the two incidents wherein he had confrontations with fellow prison

13 personnel.  (*Id.,* at 9:4-6; Doc. 132-2, PF Nos. 18-24; Ex. I, pp. 1355, 1364, 1547, 1549-1551;

14 Clark Dep. 65:12-24; McKesson Dep. 69:1-71:9.)  Plaintiff argues that in both instances, the

15 evidence shows that Defendant McKesson "became aggressive and confrontational when he felt

16 he was being disrespected."  (*Id.,* at 9:6-8.)  Plaintiff's evidence shows Defendant Clark, acting

17 under Defendant Adams' delegated authority and on his own, combined these two instance (each

18 of which warranted disciplinary action) into one disciplinary action, such that Defendant

19 McKesson received only one letter of reprimand, which minimized the efficacy of the

20 disciplinary action and was particularly errant because a Threat Assessment Team had been

21 assembled to evaluate SATF's risk from Defendant McKesson.  (*Id.,* at 9:8-10, 13-15, 18-20;

22 Doc. 132-2, PF Nos. 26-28; Ex. I, 1531-1541, 1549-1551; Clark Dep. 73:13-25.)  Plaintiff argues

23 that, to deter future misconduct,  repeated instances of misconduct should receive progressive

24 and increasingly severe discipline/punishment.  (*Id.,* at 9:10-17; Doc. 132-2 PF No. 99; Vasquez

25 Depo. 115:19-116:8.)  Plaintiff argues that Defendant McKesson should have received one letter

26 of reprimand for the first incident and a more sever discipline for the second.  (*Id.*)  Plaintiff

27 argues that the combined punishment for two separate instances shows poor supervision and

28 discipline, as well as deliberate indifference to Plaintiff's safety.  (*Id.,* at 9:19-21; Doc. 132-2, PF

1    Nos. 29-32; McKesson Dep. 77:25-78:6, Vasquez Dep. 101:8-102:22, 135:5-8, 138:24-139:3,

2    Ex. 4.)  Plaintiff also argues that, until these two instances, both Defendants Clark and Adams

3    did little to punish Defendant McKesson's misconduct.  (*Id.,* at 9:21-23.)

4            Second, Plaintiff argues that Defendant Adams did not properly discipline Defendant

5    McKesson in the Schmid incident.  (*Id.,* at 9:24-25; Doc. 132-2, PF Nos. 12-13; Ex. I, pp. 1418,

6    1419, 1421, 1788-1789; Vasquez Dep., 114:15-19, 120:12-121:9.)  Plaintiff argues, based on his

7    expert's testimony, that Defendant Adams should have appealed the denial of his request for a

8    Category II investigation instead of settling for a Category I investigation.  (*Id.,* at 9:24-28; Doc.

9    132-2, PF No. 14; Vasquez Dep., 114:15-19, 120:12-121:9.)

10           Plaintiff argues that the minimal punishment which Defendants Clark and Adams

11   imposed on Defendant McKesson equated to tacit approval of his conduct such that he continued

12   his errant behavior believing there would be no real consequences for his actions, which led to

13   the incident of which Plaintiff complains.  (*Id.,* at 10:1-6.)  Plaintiff further argues that the failure

14   to impose more severe punishment by Defendant Clark and Adams encouraged an atmosphere of

15   aggressive conduct by correctional officers (i.e.  Defendant McKesson).  (*Id.,* at 10:7-13.)

16   Plaintiff also argues that the numerous allegations against Defendant McKesson, even though

17   found to be unsubstantiated, should have put Defendants Clark and Adams "on notice that

18   [Defendant] McKesson posed a potential danger to inmates" and that any lack of awareness of

19   the incidents and investigations was an abdication of their responsibilities equating to deliberate

20   indifference and likely to cause constitutional violations.  (*Id.,* at 10:14-24.)  Plaintiff deduces

21   that Defendants Clark and Adams were deliberately indifferent to Plaintiff's safety since they did

22   little to discourage Defendant McKesson's aggressive mannerisms and use of excessive force

23   when they failed to provided meaningful discipline to Defendant McKesson so as to make "clear

24   that conduct such as the excessive force used against Plaintiff was unacceptable and would be

25   punished severely."  (*Id.,* at 11:6-11.)

26           Legally, Plaintiff argues that the ruling in *Ashcroft v. Iqbal* "reaffirmed the well-settled

27   rejection of *respondeat superior* liability," but did not fundamentally abrogate the historical

28   standards of supervisor liability.  (Doc. 149, Sur-Reply, 8:9-3:2.)  Plaintiff argues that this

conclusion is supported by the fact that the holding in *Ashcroft v. Iqbal* did not address the

supervisor liability standards articulated by the Ninth Circuit and that there is no reason to

conclude an intent to eviscerate traditional supervisor liability standards or to assume the

restriction of any such definition to only include purposeful acts despite the dearth of specific

definition for the meaning of one's "own misconduct." (*Id.,* at 3:2-22.)  Plaintiff also argues that

Defendants' errantly attempt to extend the word "purposeful" from the Supreme Court's

discussion regarding First and Fifth Amendment violations to supervisor liability standards and

that, when properly construed, any such language merely reaffirms the inapplicability of

vicarious liability sans any  requirement of purposeful action.  (*Id.,* at 4:2-19.)  Plaintiff urges that

the "purpose" requirements of *Ashcroft v. Iqbal* apply only to claims of intentional discrimination

such as found in violations of the First and Fifth Amendments.  (*Id.,* at 6:9-7:20.)  Plaintiff's

suggests that, as to claims under the Eight Amendment, the Court in *Ashcroft v. Iqbal*, consistent

with both pre- and post-*Ashcroft v. Iqbal* Ninth Circuit precedent, "reaffirmed the proposition

that a supervisor may be liable for 'his own neglect in not properly superintending the discharge

"of his subordinates" duties' " so as to allow "for liability for omissions when there was a duty to

supervise (a duty Defendants had as warden) and the defendants omission (failure to supervise or

discipline) resulted in a constitutional violation." (*Id.,* at 4:20-6:8, *quoting Iqbal*, 129 S.Ct. at

1948, *citing Dunlop v. Monroe*, 7 Cranch 242, 269, 3 L.Ed. 329 (1812).)

As the Ninth Circuit recently held, "[a] defendant may be held liable as a supervisor

under § 1983 'if there exists either (1) his or her personal involvement in the constitutional

deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and

the constitutional violation.'" *Starr*, at \*4 *quoting Hansen v. Black*, 885 F.2d 642, 646 (9th

Cir.1989).  "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the

proximate cause of the injury.  The law clearly allows actions against supervisors under section

1983 as long as a sufficient causal connection is present and the plaintiff was deprived under

color of law of a federally secured right." *Id.*, *quoting Redman v. County of San* Diego, 942 F.2d

1435, 1447 (9th Cir. 1999) (internal quotation marks omitted).

"The requisite causal connection can be established . . . by setting in motion a series of

acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.*, *quoting Redman*, 942 F.2d at 1447, *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001) (alteration in original; internal quotation marks omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.*, *quoting Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal alteration and quotation marks omitted).

### c.   Discussion

The parties' positions must be examined as to whether there exists a triable issue of material fact on either of two issues:

> (1) whether Defendants Clark and Adams knew, or reasonably should have known, of Defendant McKesson's propensity for violence (via the various investigations into accusations against him) which would cause future instances of Defendant McKesson using excessive force such as the type Plaintiff claims caused him injury in this case; and
>
> (2) whether Defendants Clark and/or Adams were able, but failed to take supervisory and/or disciplinary actions towards Defendant McKesson, other than as actually occurred.

For analysis purposes, it is most illuminating to begin with the latter of these two inquiries.

### 1.   Ability/Failure to Discipline

The first issue to address is whether Defendants Clark and/or Adams had the ability to have taken supervisory and/or disciplinary actions towards Defendant McKesson, other than as actually occurred.

### aa.   Defendants' Evidence

Defendants argue that policies and procedures restricted them from appealing the results of an investigation that they disagreed with and that they could not discipline an officer when an investigation came back unsubstantiated or lacking evidence. (Doc. 112-1, MSJ P&A, 8:1-18.)

It is undisputed that the warden can request an internal affairs investigation, but cannot

19

1   appeal the outcome of an investigation showing the allegations were unsustained.  (Doc. 132-2,

2   Plntf. Rsp. to DUF No. 15; Clark Dep. 27:12-14; Adams Dep. 68:10-12.)  It is also undisputed

3   that if allegations of staff misconduct are unsubstantiated after an investigation, the warden has

4   no authority to discipline the officer.  (*Id.*, DUF No. 16; Adams Dep. 57:12-58:14; 68:6-9.)

5   Defendants appear to rely on these two undisputed statements of fact in combination with the

6   number of investigations against Defendant McKesson that came back with results that the

7   allegations were unsubstantiated or lacked sufficient evidence to assert that they did everything

8   within their power under the circumstances to properly supervise and discipline Defendant

9   McKesson.  (Exs. A, I.)

10                          **bb.   Plaintiff's Evidence**

11          Plaintiff argues that Defendants Clark and Adams abdicated their responsibility to

12   properly supervise Defendant McKesson, and failed to properly discipline him when warranted.

13   (Doc. 132, Opp. P&A, 8:15-18.)

14          Plaintiff submitted evidence that Defendant Adams admits if the Internal Affairs office

15   came back with an investigation that Defendant Adams did not think was thorough, he had the

16   authority to tell them that they needed to look into it in greater depth.  (Doc. 132-2, PF No. 87;

17   Ex. H, Adams Dep. - Singh Case 52:5-10.)  Plaintiff also submitted evidence that Defendant

18   Clark has fired correctional officers for dishonesty, theft, felonies, and death of an inmate by

19   neglect. (*Id.*, at PF No. 88; Clark Dep. 32:14-15.)

20          Via testimony from his expert witness, Plaintiff submits that:  Defendants Clark and

21   Adams were negligent in not following through with disciplinary actions on Defendant

22   McKesson in the many incidents that he had been involved in (Doc. 132-2, PF No. 92; Vasquez

23   Dep. 27:20-28:1; 29:21-25); Defendants Clark's and Adams' deliberate indifference toward the

24   actions of Defendant McKesson resulted in Defendant McKesson continuing his behavior

25   towards inmates and ultimately resulted in injury that Defendant McKesson inflicted upon

26   Plaintiff (*id.*, PF No. 93; Vasquez Dep. 54:15-25); Defendant Adams should have paid attention

27   to the incidents that were taking place and insisted that the institution investigator pay particular

28   attention to the issues that were being charged against Defendant McKesson and that an adequate

1  investigation be completed (*id.*, PF No. 94; Vasquez Dep. 55:17-56:11); the warden is

2  responsible for ensuring that institution investigations be conducted appropriately, properly, and

3  adequately (*id.*, PF NO. 95; Vasquez Dep. 56:12- 16); if a warden believes that an investigator

4  didn't do an adequate job in the investigation, it is his or her responsibility to have a discussion

5  about it and possibly have the investigation redone (*id.*, PF NO. 96; Vasquez Dep.122:25-123:4);

6  progressive disciplinary action should have been imposed against Defendant McKesson and may

7  have stopped Defendant McKesson's inappropriate behavior (*id.*, PF NO. 99; Vasquez Dep.

8  115:19-116:8); and, it is ultimately the warden's responsibility to correct an officer's behavior

9  when an officer uses excessive force (*id.*, PF No. 100; Vasquez Dep. 140:5-9).  Defendants

10  variously object that this evidence is either argumentative, misstates Mr. Vasquez's deposition

11  testimony, and/or that it is merely Plaintiff's expert witness' opinion from spending ten to twenty

12  hours reviewing what he recalls as "pretty much all" of thousands of pages of documents before

13  testifying that Defendants Clark and Adams were negligent.  (Doc. 142-1, PF Nos. 92-96, 99-

14  100.)  An argumentative objection is appropriate at trial or in deposition, but not a summary

15  judgment where Plaintiff's burden is to in fact argue against Defendants' position.  Any

16  interpretation of Plaintiff's expert witness' deposition is to be construed in Plaintiff's favor when

17  opposing summary judgment.  Further, whether Plaintiff's expert witness reviewed every piece

18  of paper, or "pretty much all" of the thousands of pages of documents in this case goes to the

19  weight and/or credibility of his testimony and is properly left to the trier of fact.  Accordingly,

20  Defendants' objections should be overruled.

21                                                **cc.   Discussion**

22         Key to the decision on this motion is whether Defendants Clark and Adams had the

23  ability, but failed to impose greater punishment on Defendant McKesson relative to the

24  allegations of misconduct against him prior to the incident at issue in this action.  This issue

25  when combined with the evidence submitted (and/or  lack thereof), presents a dispute that is not

26  properly resolved at summary judgment.

27         Defendants present undisputed evidence that wardens of California prisons can request an

28  internal affairs investigation, but cannot appeal the outcome of an investigation showing the

1   allegations were unsustained and had no authority to discipline an officer if allegations of staff

2   misconduct are unsubstantiated after an investigation.  (Doc. 132-1, Plntf. Rsp to DUF Nos. 15,

3   16.)  However, Plaintiff presents Defendant Adams' admission in his deposition testimony in a

4   separate action that if the Internal Affairs office comes back with an investigation that he, as a

5   warden, thought was not thorough, he had the authority to tell them they needed to look into it in

6   greater depth.  (Ex. H, Adams Dep. - Sing Case, 52:4-9.)  Plaintiff also submitted evidence which

7   showed that Defendant Adams could have appealed a decision to deny his request of a Category

8   II investigation of a few claims against Defendant McKesson – apparently Defendant Adams did

9   not do so, but this is less than clear from the evidence submitted.  (Ex. I, p. 1418; Vasquez Dep.

10  114:15-19; 120:12-121:9.)

11      Neither party provided a definition or an explanation as to whether (and if so, how) an

12  "appeal" of an outcome of an internal affairs investigation differed from telling Internal Affairs

13  to look into an investigation in greater depth when they thought it was not thorough.  Also,

14  neither party submitted any information as to the difference and/or steps between and requisite

15  criteria for a "Category I" and a "Category II" investigation.

16      The opposing submissions of evidence, and lack of clarification/definition/explanation

17  raise a triable issue of fact as to whether Defendants Clark and/or Adams could have requested

18  further investigation of accusations against Defendant McKesson when investigations found

19  claims against him to be unsubstantiated or lacking sufficient evidence.

20      Further, Plaintiff submitted evidence showing that Defendant Clark should not have

21  combined the discipline of Defendant McKesson for two instances of verbal confrontations with

22  a superior and a co-worker into a solitary letter of reprimand, when discipline as strict as

23  imposition of a pay cut was considered, and that in that paperwork, Defendant Clark referred to

24  Defendant McKesson as being less than truthful.  (Doc. 132-2, PF Nos. 28-32; Ex. I, pp. 1531-

25  1541, McKesson Dep. 77:25-78:6; Vasquez Dep. 101:8-102:22; 135:5-8; 138:24-139:3 & Ex. 4.)

26  Defendants object to this evidence as irrelevant since it involved verbal confrontations between

27  Defendant McKesson and superior officers rather than instances involving accusations of

28  excessive force against an inmate; on the basis that Plaintiff's expert witness opined that he

22

*thought* the letter of reprimand was done for the benefit of Defendant Clark, but did not opine

that he *knew* as much; and that whether Defendant Clark referred to Defendant McKesson as

being less than truthful was irrelevant to the issues in this case.  (Doc. 142-1, Def. Obj. to PF No.

28-32.)  However, the admission that Defendant Clark believed Defendant McKesson had been

less than truthful in an investigation where he verbally suggested physical confrontation to a

superior (i.e. "parking lot therapy") gives way to the logical question and thus relevance of

inquiry as to whether Defendant Clark had basis to know, or should have known, that Defendant

McKesson had been less than truthful in other investigations of accusations of excessive force by

inmates against him such that investigations in greater depth should have been requested.

Accordingly, a triable issue of fact exists as to whether Defendants Clark and Adams had

the ability to discipline Defendant McKesson more severely, but failed to do so.

## 2. <u>Knew or Reasonably Should Have Known</u>

### aa. <u>Defendants' Evidence</u>

The main thrust of Defendants' arguments upon which they urge a finding that they did

not know and reasonably should not have known of Defendant McKesson's propensity to use

excessive force on inmates based on the various investigations against Defendant McKesson are

distilled into two statements:  (1) good officers get accusations filed against them and (2) most of

the investigations found the allegations against Defendant McKesson were unsubstantiated or

lacked sufficient evidence.

Defendants Clark and Adams present the following evidence to support their argument:

It is undisputed that Defendant Adams was the warden at SATF from August 2000 until

December of 2005 and Defendant Clark was the warden at SATF from 2006 through 2008.

(Doc. 112-2, DUF Nos. 3, 4; Adams Dep. 10:7-16; Clark Dep. 9:2-5.)  The warden does not

directly supervise correctional officers.   While Plaintiff disputed this fact, he only did so

inasmuch as Defendant Clark testified that he did not personally supervise correctional officer,

which Plaintiff objected could not be generalized to all wardens.  (Doc. 132-1, Plnt. Rsp. DUF

No. 7; Clark Dep. 18:2-8.)  It is also undisputed that, in the chain of command at SATF, the

warden is at the top, followed by chief deputy wardens, associate wardens, facility captains,

1  correctional lieutenants, correctional sergeants and correctional officers. (*Id.*, DUF No. 8; Clark

2  Dep. 18:13-18.)

3        It is further undisputed that roughly 1300 correctional officers and several thousand

4  inmates were at SATF during the time period relevant to Plaintiff's complaint. (*Id.*, DUF No. 9;

5  Adams Dep. 19:6-9, 35:8-13.)  Due to the large size of the prison, Defendant Clark delegated a

6  number of matters to other staff at SATF. (*Id.*, DUF No. 10; Clark Dep. 14:18-15:3.)  Defendant

7  Clark did not read every Internal Affairs Report regarding staff misconduct that was referred to

8  him. (*Id.*, DUF No. 11; Clark Dep. 42:22-43:7.)  The warden is not informed when an inmate

9  files a grievance complaining about an officer, though he may be informed during the appeals

10 process. (*Id.*, DUF No. 12; Clark Dep. 24:15-19, 24:23-25:7, 91:13-24.)  SATF receives a

11 number of inmate grievances (easily possibly as many as one hundred), and if they reach the

12 second level of appeal and the Director's level, they are screened by an administrative assistant.

13 (*Id.*, DUF No. 13; Clark Dep. 89:7-10, 90:7-11, 19-22.)  It is a very common practice for chief

14 deputy wardens, as designees of the warden, to review and respond to inmate grievances. (*Id.*,

15 DUF No. 14; Clark Dep. 87:1-5, 89:7-10; 90:7-11.)

16       The Employee Relations Officer keeps track of ongoing investigations of CDCR

17 employees. (*Id.*, DUF No. 17; Clark Dep. 30:18-21.)  It is undisputed that Defendants Clark and

18 Adams recall Defendant McKesson as a "by the book" officer who enforced the rules and

19 followed regulations. (*Id.*, DUF NO. 39; Clark Dep. 53:20-24, Adams Dep. 35:24-36:2.)

20 Officers can be doing their job "by the book" and still have grievances filed against them. (*Id.*,

21 DUF NO. 40; Clark Dep. 102:9-12.)  It is undisputed that just because an officer receives

22 complaints, does not necessarily mean he is not doing his job and that numerous SATF

23 correctional officers have been investigated by Internal Affairs several times. (*Id.*, DUF Nos. 41,

24 42; Clark Dep. 47:17-20,102:21-22.)  It is also undisputed that more than one Internal Affairs

25 investigation about the same correctional officer can mean that the officer is doing his job, and

26 that inmates are trying to pressure him not to do his job. (*Id.*, DUF No. 43; Clark Dep.

27 47:21-48:4.)

28       It is further undisputed that Defendant Adams was detailed to locations other than SATF

at least ten times while he was the warden, sometimes for several months, including an

assignment in Sacramento from June 2005 through November 2005 (*id.*, DUF NO. 44; Adams

Dep. 10:17-11:17) was rarely at SATF in 2005 (*id.*, DUF NO. 45; Adams Dep. 79:2-13); was

detailed to another location and was not at SATF when two internal affairs investigation reports

involving Defendant McKesson were returned, and he is not sure who received the documents in

his absence (*id.*, DUF No. 46; Adams Dep. 39:2-40:16, 48:13-49:3); and that Plaintiff's

allegations of staff misconduct against Defendant McKesson were unsustained after an

investigation (*id.*, DUF No. 47; R. Hall Dec. ¶ 4-A, Ex. B).

### bb.   Plaintiff's Evidence

Plaintiff argues that Defendants Clark and Adams knew or reasonably should have known

of Defendant McKesson's propensity to use excessive force because they were his ultimate

supervisors, and Defendant McKesson "had been subject to numerous reports and investigations

involving accusations of excessive force and aggressive behavior."  (Doc. 132, Opp. P&A, 8:12-

18.)

Plaintiff submits evidence which he suggests shows:  a number of accusations against

Defendant McKesson for incidents which occurred before the date of the incident complained of

in this action (Doc. 132-2, PF. Nos. 4, 5, 6, 7, 8, 9, 11, 16, 17, 18, 21, 22, 23; McKesson Dep.

69:1-71:9, 68:8-22; Ex. I, pp. 1483, 1350, 1650-88, 1674, 1592-1612, 1702-1709, 1735, 1790-

1843, 1353, 1354, 1355, 1549-1551); that Defendant Adams was made aware of Defendant

McKesson's proclivities on a number of occasions via memorandums, letters, and/or reports (*id.*,

PF Nos. 10, 15, 20, 28; Ex. I, pp. 1735, 1925, 1364, 1531-1541); that Defendant Adams

requested investigations regarding Defendant McKesson (*id.*, PF Nos. 12, 13; Ex. I, pp. 1418-

1419, 1421, 1788-1789); that Defendant Clark was made aware of Defendant McKesson's

proclivities on a number of occasions via memorandums and/or letters (*id.*, PF Nos. 19, 24, 25,

26; Clark Dep. 65:12-24, 69:7-24; Ex. I, pp. 1547, 1549-1551); and that Defendant Clark

requested investigations regarding Defendant McKesson (*id.*, PF Nos. 26, 27; Clark Dep. 73:13-

25; Ex. I,  pp. 1549-1551).  Defendants object to this evidence as inadmissible hearsay and

character evidence; that its probative value is outweighed by the danger of unfair prejudice that it

is likely to engender; that some of it is too remote in time to be relevant; that most of the accusations were found to be unsubstantiated or lacking sufficient evidence; and that there is no proof that either Defendant Clark or Adams ever received or were aware of a number of the accusations. (Doc. 142-1, Obj. to PF Nos. 4-11, 15-28.) There is no statement as to any rules and/or law relied on as the basis for these objections. However, assuming that they intended to raise these objections under Rules of Evidence 401, 403, and 404, the Court deems this evidence to be relevant, probative, and goes to the weight rather than the admissibility of evidence as to whether Defendants Clark and Adams were aware of and/or could have requested and/or obtained further investigation(s) when findings of unsubstantiated or lacking evidence were returned, all of which goes to the question of whether Defendants Clark and Adams knew, or reasonably should have known of Defendant McKesson's propensities to utilize excessive force. As to the hearsay objections, these past complaints, investigations, reports and recommendations are not offered for the truth of the detailed facts of the incidents themselves  but rather the cumulative fact that the complaints were made in the first instance and conclusions were reached of which the wardens were or should have been aware.  These defense objections are overruled.

Plaintiff submits evidence that Defendant Clark considered issuing Defendant McKesson a 10% pay cut, but entered a stipulation with the California Peace Officers Association to issue a letter of reprimand to Defendant McKesson for his conduct in two instances of inappropriate comments and or verbal confrontations with superior officers.  (Doc. 132-2, PF Nos. 29-31, McKesson Dep. 77:25-78:6; Vasquez Dep. 101:8-102:13, 135:5-8, 138:24-139:3 & dep. Ex. 4.) Defendants object to this evidence arguing that it lacks foundation and is irrelevant because Defendant Clark's decision to impose one form of discipline over another for an unrelated issue (verbally suggesting physical confrontation, i.e. "parking lot therapy" with superiors) neither proves or disproves a failure to properly supervise and/or discipline Defendant McKesson.  (Doc. 142-1, Obj. to PF Nos. 29-31.)  However, a warden's knowledge of a prison guard verbally confronting and suggesting physical confrontation to his superior officers, at the summary judgment stage, appears relevant as to whether the warden knew or reasonably should have been aware of that officer's proclivities towards violence -- particularly against an inmate.

Plaintiff also submitted evidence regarding incidents involving Defendant McKesson which occurred subsequent to March 6, 2006 and various of Defendant Clark's responses thereto. (Doc. 132-2, PF Nos. 32-39.)  Defendants object to all of this evidence as irrelevant since it occurred after the date in question in this action such that it does not tend to prove or disprove that either Defendant Clark or Defendant Adams failed to properly supervise or discipline Defendant McKesson so as to lead to the incident on March 6th.  These objections are properly sustained.

Plaintiff submits undisputed evidence that:  it was part of Defendant Adams' responsibility as warden to be aware of officers who had an unusually large number of 602 complaints (Doc. 32-2, PF No. 80; Ex. H, Adams Dep. - Singh Case, 36:18-22); at some point Defendant Adams became concerned about Defendant McKesson's behavior in relation to inmates, but doesn't know when that was (*id.,* at PF No. 81; Ex. H, Adams Dep. - Singh Case 37:23-25; 38:1-3); Defendant Adams testified, "Everything is black and white to Officer McKesson.  There are no gray areas.  A piece of tape is contraband; food is contraband; a weapon is contraband. [Defendant] McKesson doesn't differentiate." (*id.*, at PF No. 82); when Defendant Adams became concerned about Defendant McKesson, he opened up at least one investigation on him (*id.*, at PF No. 83; Ex. H, Adams Dep. - Singh Case 38:20-23); Defendant Adams has admitted that reviewing any previous Internal Affairs investigations of Defendant McKesson would have been prudent if or when Defendant Adams was contemplating bringing disciplinary actions against McKesson (*id.*, at PF No. 84; Ex. H, Adams Dep. - Singh Case 39:12-18); in answer to the question, "What you're saying is that you would assume that as part of your responsibilities when you contemplated conducting an investigation of [Defendant] McKesson, that you would go back and look at his previous IA investigations at SATF?" Defendant Adams responded "Yes." (*id.*, PF No. 85; Ex. H, Adams Dep. - Singh Case 40:7-12); the warden at SATF has the authority to look at a correctional officer's personnel file (*id.*, at PF No. 86);

### cc.    Discussion

Defendants move for summary judgment relying solely on the fact that the vast majority

of investigations of allegations against Defendant McKesson yielded findings that they were

unsubstantiated or lacked sufficient evidence, coupled with their proposition that Defendants

Adams and Clark could not have appealed any such findings.  However, as discussed herein

above, a dispute exists as to whether Defendants Clark and/or Adams could have obtained further

inquiry when an investigation into allegations against Defendant McKesson came back

unsubstantiated or lacking of sufficient evidence.  Since it is not established that all

investigations into allegations against Defendant McKesson had been as thorough as possible,

and/or that all such avenues had been fully vetted, it is also not established that the findings of

unsubstantiated or lacking evidence are sufficient to show that Defendants Clark and Adams did

not know, or should not reasonably have been aware of Defendant McKesson's propensities to

utilize excessive force when dealing with inmates.  Accordingly, Defendants Clark and Adams

are not entitled to summary judgment on Plaintiff's claims against them for their failure to

supervise and/or discipline Defendant McKesson.

### 2.    Training

A supervisor's failure to train subordinates can give rise to individual liability under

Section 1983 where the supervisor's failure amounts to deliberate indifference to the rights of

persons with whom the employees are likely to come into contact.  *See Canell v. Lightner*, 143

F.3d 1210, 1213-14 (9th Cir.1998) (to prevail on claim that supervisor violated plaintiff's

constitutional rights by failing properly to train subordinate, plaintiff must show that failure

amounted to deliberate indifference).  For liability to attach in this circumstance, Plaintiffs must

show that the training of the subordinate was inadequate and that the inadequacy of the training

was the result of a deliberate or conscious choice on the part of Vasquez.  *Id.,* at 1214.  Also, the

identified training deficiency must be causally connected to the ultimate injury.  *City of Canton v.

Harris*, 489 U.S. 378, 391 (1989).  In other words, to impose liability, Plaintiffs are required to

show that the inadequate training actually caused the constitutional violation and that the

violation would have been avoided had the employees been properly trained.  *Id.,* at 389-91; *Lee

v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir.2001) (citations and internal quotations

omitted).

1    Defendants argue that neither Defendant Clark nor Defendant Adams had a role in

2 determining the standardized use-of-force training provided to CDCR correctional officers such

3 as Defendant McKesson.  (Doc. 112-1, Def. P&A, 7:15-17.)  Additionally, Plaintiff has produced

4 no evidence that Defendant McKesson received inadequate training.  (*Id.*, at 7:17-18.)  Even if he

5 did, without specific evidence that Defendants Clark and/or Adams were aware of alleged

6 training deficiencies with respect to Defendant McKesson, or that these alleged training

7 deficiencies created an excessive risk to inmate safety, they cannot be held liable for Plaintiff's

8 injuries.  (*Id.*, at 7:18-21.)  In the absence of concrete evidence of problems relating to Defendant

9 McKesson's training, Defendant Clark and Defendant Adams had no "duty to change either

10 [their] supervising chain of command or statewide training requirements or materials."  (*Id.*, at

11 7:21-24 *quoting Jeffers*, 267 F.3d at 916.)

12    In his opposition, Plaintiff did not meet his burden as to any inadequacies in Defendant

13 McKesson's training as he neither submitted any argument, nor cited to any authority to suggest

14 that Defendants Clark and Adams had any involvement in, or liability for, inadequacies therein.

15    It is undisputed that wardens have "no role in determining the type of training received by

16 correctional officers during the training academy or the mandatory annual training courses."

17 (Doc. 132-1, Plntf. Resp. To DUF No. 36.)  Since Defendants Clark and Adams, as wardens, had

18 no role in determining the type of training received by Defendant McKesson, a correctional

19 officer, they have no liability for any inadequacies therein.

20    **B.**  **Qualified Immunity**

21    Government officials enjoy qualified immunity from civil damages unless their conduct

22 violates "clearly established statutory or constitutional rights of which a reasonable person would

23 have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity is 'an

24 entitlement not to stand trial or face the other burdens of litigation.' "  *Saucier v.Katz*, 533 U.S.

25 194, 200 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), overruled on other

26 grounds by *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 818 (2009)).  In applying the

27 two-part qualified immunity analysis, it must be determined whether, "taken in the light most

28 favorable to [Plaintiff], Defendants' conduct amounted to a constitutional violation, and . . .

whether or not the right was clearly established at the time of the violation." *McSherry v.City of Long Beach*, 560 F.3d 1125, 1129-30 (9th Cir.2009). The second prong asks whether the right was clearly established such that a reasonable officer in those circumstances would have thought her or his conduct violated the alleged right. *Saucier*, 533 U.S. at 201; *Inouye v. Kemna* 504 F.3d 705, 712 n.6 (9th Cir. 2007). These prongs need not be addressed by the Court in any particular order. *Pearson*, 129 S.Ct. at 818. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) *ref. Saucier*, 533 U.S. at 201-02.

In 2006, the law on supervisory liability was clearly established. *See Dubner,* 266 F.3d at 968; *Watkins*, 145 F.3d at 1093; *Hansen*, 885 F.2d at 646; *Redman*, 942 F.2d at 1447. When the applicable facts are taken in the light most favorable to Plaintiff they show, as discussed in greater detail herein above, that Defendants Clark and Adams failed to supervise and/or discipline Defendant McKesson which resulted in Plaintiff's injury in violation of the Eight Amendment. Defendants Clark and Adams are not entitled to qualified immunity on Plaintiff's claims that they failed to properly supervise and discipline Defendant McKesson.

## C.   Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002).

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which the defendants have the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to

exhaust is subject to an unenumerated Rule 12(b) motion, and in resolving the motion, the Court may look beyond the pleadings and decide disputed issues of fact. *Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010); *Wyatt*, 315 F.3d at 1119-20. If the Court concludes that the prisoner has failed to exhaust, the proper remedy is dismissal without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005); *see also Ritza v. Int'l Longshoremen's & Warehousemen's,* 837 F.2d 365, 369 (9th Cir. 1988) (per curiam) (" 'In ruling on a motion for summary judgment the court should not resolve any material factual issue . . . . If there is such an issue it should be resolved at trial . . . . On the other hand, where a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue . . . and that the court has a broad discretion as to the method to be used in resolving the factual dispute.' Moore's Federal Practice, supra, ¶ 56.03 at 56-61 (footnotes omitted); *cf. Thornhill Publishing Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979) ('Faced with a factual attack on subject matter jurisdiction, "the trial court may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56. . . . [N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims" ' (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*., 549 F.2d 884, 891 (3d Cir.1977) (footnote omitted)))"); *see also Wyatt*, 315 F.3d at 1119-20 (if the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice). Accordingly, if Defendants' motion is granted based on Plaintiff's failure to exhaust the available administrative remedies prior to filing suit, Defendants would not be entitled to summary judgment, but rather would be entitled to dismissal of Plaintiff's claims against them without prejudice.

The CDCR has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1 (West 2009). The process is initiated by submitting a CDCR Form 602 either of which are commonly referred to an "inmate appeal" or a "602." *Id.*, at § 3084.2(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." *Id.* at § 3084.5. 602s must be

submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. *Id.* at §§ 3084.5, 3084.6(c).  In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006); *McKinney*, 311 F.3d at 1199-1201.

### 1.   Discussion

Plaintiff is proceeding against Defendants Clark and Adams for failing to supervise and/or discipline Defendant McKesson.  Defendants Clark and Adams move for dismissal of Plaintiff's claims against them, relying on the declaration of Appeals Coordinator R. Hall and exhibits attached thereto, arguing that none of the eleven inmate appeals that Plaintiff filed while at SATF "pertained to any failure to train, supervise, or discipline a correctional officer," and, as such, "Plaintiff failed to exhaust those administrative remedies which were available to him with respect to his claim that [Defendants Clark and Adams] failed to train, supervise, and discipline [Defendant] McKesson."  (Doc. 112-1, MSJ, 9:1-10:4.)

Plaintiff opposes by arguing that, since Defendants Clark and Adams previously moved for dismissal of Plaintiff's claims for failure to exhaust administrative remedies which was ultimately denied without defense objections to the findings and recommendations having be filed, the law of the case doctrine precludes this Court from reconsidering the issue.  (Doc. 132, Plntf. Opp. P&A, 11:21-12:10.)  Further, Plaintiff argues that, even if the law of the case does not act as a procedural bar, he exhausted his supervisory liability claims such that this action should not be dismissed.[14]  (Doc. 132, Plntf. Opp. P&A, 12:11-13:28.)

"The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs."  *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir.1990).  Application of the law of the case doctrine is discretionary.  *See United States v.*

---

[14] Plaintiff objects to the declaration of R. Hall as he has never been identified as a witness (lay or expert) through disclosures or in discovery and may of the statements in his declaration constitute improper opinion testimony.  (Doc. 132, Plntf. Opp. P&A, p. 12, fn. 2.)  However, this objection need not be reached as Hall's declaration is unnecessary and is not considered.  Rather, Plaintiff's inmate appeals are reviewed to see whether the verbiage utilized therein was sufficient to have given prison administrators notice of Plaintiff's claim that Defendant McKesson's actions warranted supervision and/or discipline.

1    *Mills*, 810 F.2d 907, 909 (9th Cir.1987).  The doctrine "is not dispositive, particularly when a

2    court is reconsidering its own judgment, for the law of the case 'directs a court's discretion, it

3    does not limit the tribunal's power.' "  *Gonzales v. Arizona*, 624 F.3d 1162, 1186 (9th Cir. 2010);

4    *quoting Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 469 (9th Cir.2000) (*quoting*

5    *Arizona v. California,* 460 U.S. 605, 618 (1983)).  The Ninth Circuit has "identified three

6    exceptional circumstances in which . . . the concerns of finality and efficiency [were] outweighed

7    [by the need to avoid manifest injustice].  Law of the case should not operate as a constraint on

8    judicial review where '(1) the decision is clearly erroneous and its enforcement would work a

9    manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3)

10   substantially different evidence was adduced at a subsequent trial.' "  *Gonzales*, 624 F.3d at

11   1185-87 (*quoting Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir.1997) (en banc) (Kozinski, J.,

12   dissenting) (citing cases), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997)

13   (internal quotation marks and footnote omitted).)  Though Plaintiff raised the law of the case

14   doctrine in his opposition, Defendants failed to address any of the applicable elements either in

15   their motion or reply.  It appears that, under the law of the case doctrine, Defendants would argue

16   that ruling on their motion to dismiss (Doc. 41), if allowed to stand, would work manifest

17   injustice in as much as they claim that the evidence they submit in support of the present motion

18   shows that Plaintiff did not exhaust his administrative remedies on his claims against them.

19          However, when the evidence submitted on the issue is reviewed it reveals that Plaintiff's

20   602s contained sufficient information to have placed prison officials on notice of his claims that

21   Defendant McKesson's actions warranted greater supervision and/or discipline than was being

22   applied at the time.

23          While Defendants submitted copies of a number of inmate appeals Plaintiff submitted,

24   one (SATF 06-01022 "hereinafter IA 1022") pertains to the events at issue in this action.  (Doc.

25   113-2, Exs. to Hall Dec.)  In IA 1022, Plaintiff complains of the events which occurred on March

26   6, 2006 involving his glue sticks and the encounter with Defendant McKesson.  (Doc. 113-2, at

27   pp. 421-449; Doc. 2, Not. Lodg. to Compl., Ex. J, pp. 50-57, Ex. K, pp. 64-66.)  At the first level,

28   which Plaintiff signed on March 11, 2006, Plaintiff stated that "C/O McKesson, really need [sic]

33

to be counseled about his aggression and need [sic] to be seen by a professional for his anger management (Immediately) and this matter above [sic] investigated." (*Id.,* at p. 427, 449; Doc. 2, Ex. J, p. 57.)  IA 1022 was granted at the first level.  (*Id.*, at 424; Doc. 2, Ex. J., p. 56.)  At the second level, Plaintiff sought to "know disciplinary actions taken against C/O McKesson & that he be given anger management course, on [sic] job training in policy & procedures & conduct." (*Id.*, at p. 424; Doc. 2, Ex. J., p. 56.)  At the third level, Plaintiff once again sought to "know disciplinary actions taken against C/O McKesson & that he be given a [sic] anger management course.  On [sic] job training on Inst., Policy & Procedure & Conduct."  (Doc. 2, Ex. J., p. 56.)

Defendants argue that Plaintiff did not exhaust his claims against Defendants Clark and/or Adams in IA 1022 because he did not insinuate that he had issues with the prison wardens in the first two levels (Doc. 142, Def. Reply, 7:6-11) and while Plaintiff requested monetary compensation, anger management training, and on-the-job training for McKesson at the third level, these requests were not addressed since they were not part of the original appeal (*Id.*, at 7:11-14, *ref* Doc. 2, Not. Lodg. to Compl., at 65-66).  Plaintiff argues that the relief sought in his initial grievance that Defendant McKesson be counseled about his aggression; that he needed to immediately be seen by a professional for his anger management; and that the matter be investigated was, though stated in very simple language, Plaintiff's request that appropriate supervisory officials take action by counseling Defendant McKesson and investigating his conduct, and that these requests were repeated and slightly more focused at the second and third levels.  (Doc. 132, Opp. P&A, 12:12-13:4.)

"Exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."  *Jones*, 549 U.S. at 219.  "The PLRA requires exhaustion of 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), but nothing in the statute imposes a 'name all defendants' requirement."  *Id.*, at 217.  Defendants admit as much.  (Doc. Def. Reply, 6:24-7:2.)  Accordingly, IA 1022 was not insufficient for not having identified either Defendant Clark or Adams therein.

Where a prison's grievance procedures are silent, a prisoner's allegations will suffice if they notify the prison of a problem as "[t]he primary purpose of a grievance is to alert the prison

to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin v. Arpaio* 557 F.3d 1117, 1122 (9th Cir. 2009), *ref Johnson v. Johnson*, 385 F.3d at 522, *as cited with approval in Jones*, 549 U.S. at 219.  A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved.  *Griffin,* 557 F.3d at 1120.  A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  *Id.*  "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  *Id.*, citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).  "The primary purpose of a grievance is to notify the prison of a problem and facilitate its resolution, not to lay groundwork for litigation."  *Id., ref Johnson*, 385 F.3d at 522 *cited with approval in Jones,* 549 U.S. at 219.  A grievance need not be extremely specific as it need only "'provide enough information, . . . to allow prison officials to take appropriate responsive measures.'"  *Id., quoting Johnson v. Testman,* 380 F.3d 691, 697 (2d. Cir. 2004).

As stated at the first level of IA 1022, Plaintiff's request that Defendant McKesson be counseled about his aggression, that Defendant McKesson immediately see a professional for his anger management, and that the matter be investigated were sufficient to alert the prison of the problem with Defendant McKesson's anger and use of force and Plaintiff's desires for Defendant McKesson's supervisors to take action.  It matters not that Plaintiff did not use the words "train," "supervise," or "discipline."  Plaintiff clearly requested action that could only be taken by those in positions of supervision over Defendant McKesson.  Plaintiff pursued IA 1022 to the final level, though he need not have done so as it was granted at every level.  *See Harvey v. Jordan*, 605 F.3d 681, 684-85 (9th Cir. 2010) (finding prisoner had exhausted where his inmate appeal received a "partial grant" of his first request – "An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies").  Thus, in IA 1022, Plaintiff exhausted his claims against Defendants Clark and Adams, or any other persons in a position of authority over Defendant McKesson.

Accordingly, applying the law of the case doctrine would not cause a manifest injustice as Plaintiff exhausted his administrative remedies prior to filing this action.  Defendants Clark and

Adams request for summary judgment based on Plaintiff failing to exhaust his administrative remedies against them is properly denied.

## V.   Conclusions and Recommendations

Accordingly, this Court finds that Defendants Clark and Adams have not met their burden and are not entitled to summary judgment on the merits and are not entitled to qualified immunity on Plaintiff's claims that they failed to properly train, supervise and/or discipline Defendant McKesson so as to result in a violation of Plaintiff's constitutional rights.  Further, Plaintiff properly exhausted his administrative remedies prior to filing this suit.

As set forth herein, the Court HEREBY RECOMMENDS that Defendants Clark and Adams are not entitled to judgment as a matter of law such that their Motion for Summary Judgment, filed December 3, 2010 (Docs. 112, 113), should be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 16, 2011**                        _____/s/ Sandra M. Snyder_____
                                                                              UNITED STATES MAGISTRATE JUDGE